# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1018 | **DATE** | 3/25/2004 |
| **CASE TITLE** | FRANK DI PIETRO vs. PRUDENTIAL INSURANCE COMPANY OF AM | | |

MOTION:

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

MEMORANDUM OPINION AND ORDER

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Plaintiff's motion for summary judgment is granted and defendant's cross-motion for summary judgment is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

number of notices

date docketed

docketing deputy initials

date mailed notice

LG / courtroom deputy's initials

2004 MAR 25 PM 5: 11

CLERK, U.S. DISTRICT COURT

Date/time received in central Clerk's Office

mailing deputy initials

Document Number

FRANK DI PIETRO, )
)
                  Plaintiff, )
)
           vs. )    No. 03 C 1018
)
PRUDENTIAL INSURANCE COMPANY OF )
AMERICA, )
)
              Defendant. )

DOCKETED

MAR 2 6 2004

## MEMORANDUM OPINION AND ORDER

      Plaintiff Frank DiPietro, a former employee of Washington Group International, Inc. (Washington), brought this action for recovery of short- and long-term disability insurance benefits against the plan administrator, defendant Prudential Insurance Company of America (Prudential), pursuant to Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B). Now before the court are plaintiff's motion for summary judgment, which is granted, and defendant's cross-motion for summary judgment, which is denied.

## BACKGROUND

      Plaintiff started working as a computer-aided design operator for Washington on July 7, 2000. As a Washington employee he received disability insurance pursuant to a plan underwritten by Prudential. Prudential pays benefits for short-term disability after seven consecutive days of disability and for long-term disability after 26 weeks of continuous disability. Under the terms of the plan a claimant is disabled when Prudential determines that

> you are unable to perform the material and substantial duties of your regular
> occupation due to your sickness or injury; and

you have a 20% or more loss in your indexed monthly earnings due to that sickness or injury.

Plaintiff stopped working at Washington on March 5, 2002, and filed a claim for short-term disability benefits nine days later on March 14. DiPietro's claim was denied, as were his two subsequent appeals.

In 1952, at age five, plaintiff was diagnosed with polio. The disease affected his left leg and right arm, and even after recovery his left leg still experienced residual paralysis and weakness. Forty-eight years later, on August 22, 2000, plaintiff joined a post-polio clinic database. On a survey provided by the database, plaintiff stated that he was diagnosed with post-polio syndrome in "about 1997." He identified his symptoms as new weaknesses in muscles that were both affected and unaffected by polio, pain in his muscles and joints, fatigue out of proportion with his activity level, and an inability to perform activities that were previously possible. On a followup questionnaire for the database, dated August 8, 2001, plaintiff reported a change in his symptoms since his last visit. He wrote that he was tired and exhausted, had trouble sleeping and suffered from headaches.

During 2001, plaintiff sought treatment from his physician, Dr. Mario Prete, for persistent headaches and some nausea and vomiting. At an appointment on February 12, 2001, Dr. Prete noted tenderness by the cervical muscles in the back of plaintiff's head, but did not record any other abnormalities. The doctor prescribed medication for plaintiff's headaches and counseled him as to gastroesophageal reflux disease. On September 13, 2001, Dr. Prete assessed plaintiff as having "Persistent neck pain . . . Headaches . . . Possible sleep apnea." On Dr. Prete's recommendation, Dr. Glen Glista, a neurologist, examined plaintiff on November 14, 2001, due to his recurrent headaches. Dr. Glista noted the weakness in

plaintiff's left leg caused by polio. The doctor prescribed medication for plaintiff's headaches, but did not find any indication of a serious neurological problem.

Dr. Prete saw plaintiff again on December 20, 2001. In his notes, Dr. Prete discussed plaintiff's history with polio. Plaintiff told Dr. Prete that he thought polio was affecting him and requested a referral to a polio specialist. Dr. Prete again observed tenderness at the base of plaintiff's skull and assessed that he was probably suffering from tension headaches and arthritis of the neck.

On January 24, 2002, Dr. James Sliwa, a post-polio syndrome specialist, examined plaintiff at the Rehabilitation Institute of Chicago. In his report, Dr. Sliwa related plaintiff's medical and social history. He wrote that plaintiff worked for a computer drafting company but would be unemployed as of March because his company was closing. The report listed plaintiff's three primary medical complaints: headaches, neck pain, and fatigue. The doctor found that plaintiff had "symptoms compatible with postpolio syndrome" and recommended that he participate in a sleep study and physical therapy. Plaintiff underwent a sleep study that revealed he did not suffer from sleep apnea, ruling it out as the cause of his fatigue. On February 7, 2002, during a followup visit, Dr. Sliwa recorded plaintiff's "complaints of fatigue, decreasing functional status, limited . . . ambulation because of fatigue," and diagnosed him with post-polio syndrome. In a letter dated February 18, 2002, Dr. Sliwa informed Prudential of plaintiff's diagnosis and the possibility that he would not be able to work full-time during his treatment.

Plaintiff did not return to work at Washington after March 4, 2002. Three days later plaintiff returned to see Dr. Sliwa. The doctor's treatment notes from that appointment state plaintiff's "symptoms have been getting worse over the past few years, particularly the fatigue

to the point where he would require naps during the day and wasn't able to do as much activity as he was in the past, having difficulty concentrating." Dr. Sliwa's physical examination revealed that plaintiff's strength findings were consistent with the previous month's findings. The doctor's assessment concluded that plaintiff was "significantly limited by his fatigue." He also mentioned that he had discussed with plaintiff the "possibility of therapy in the future . . . ." Following this appointment, Dr. Sliwa submitted a second letter to Prudential on March 8, 2002, expressing his opinion that plaintiff was not capable of full-time employment due to his worsening symptoms of post-polio syndrome.

Plaintiff filed an application for short-term disability on March 14, 2002. On the attending physician statement submitted in support of the application, Dr. James Sliwa diagnosed plaintiff with post-polio syndrome. Dr. Sliwa stated that plaintiff's lower extremity was weak and that he suffered from fatigue, "which interferes with all activity that requires concentration." In response to the question, "What Job Category best describes the claimant's functional abilities," Dr. Sliwa marked the box, "Sedentary." He wrote in the margin next to his response, "Still a fatigue problem." Along with this statement, plaintiff submitted Dr. Sliwa's examination notes and letters. Prudential denied plaintiff's claim on April 4, 2002. Plaintiff appealed the decision a week later, submitting additional records from Dr. Sliwa and plaintiff's own written statement. In May, plaintiff faxed Prudential information about post-polio syndrome and letters from family and friends discussing their observations of his condition.

Plaintiff began physical therapy at the Rehabilitation Institute of Chicago on April 8, 2002, and continued through May 1, 2002. Plaintiff did not believe that therapy was helping his symptoms, but Dr. Sliwa's tests revealed slight improvements in the strength of his hips.

In his notes from May 2, 2002, Dr. Sliwa wrote that he would recommend to plaintiff's primary care physician that plaintiff return to therapy. He also suggested that plaintiff see a psychiatrist or seek out some other form of treatment for depression.

On August 22, 2002, Prudential denied plaintiff's first appeal. Plaintiff filed a second appeal on December 2, 2002, providing Prudential with newly acquired information. After a fall that required treatment at a hospital, plaintiff was re-examined by Dr. Sliwa on September 25, 2002. The doctor reported plaintiff's recurrent symptoms and observed decreased tone in his legs and "changes" in his neck that were revealed by X-ray. Dr. Sliwa recommended that plaintiff wear a soft cervical collar to support his head and visit a psychiatrist. The doctor also wrote an order for plaintiff to return to physical therapy, which he did on October 22, 2002. The objective findings from plaintiff's re-evaluation for outpatient physical therapy included a deficiency of strength in his cervical spine, left arm and trunk.

On October 23, 2002, occupational therapist Maureen Ziegler completed a functional-capacity evaluation of plaintiff. The general summary of the evaluation stated:

> Mr. Dipietro participated in a 2.5 hour evaluation with great difficulty. He demonstrated poor body mechanics with lifting, standing, and walking activities. Mr. Dipietro demonstrated moderate pain behaviors including use of cervical collar, holding his head, and frequent rest breaks. His pain level at the beginnning of testing was 8-9/10 in his head, neck, and right wrist. At the conclusion of testing, his pain level was rated at 9/10 in his head, neck, shoulders, and RUE, as well as complaints of overall exhaustion. During the evaluation, Mr. Dipietro demonstrated difficulty standing, walking, lifting, reaching, handling, fingering, carrying, and bending.  Mr. Dipietro demonstrated poor endurance as evidenced by frequent rest breaks, increased respiration, increased perspiration, decreased pacing, and decreased body mechanics.

Ziegler concluded that plaintiff could work at "the sedentary level respectful of the tolerances outlined in this report." The report listed plaintiff's tolerances for activities such as standing,

sitting, walking, bending, and handling. In an undated addendum to her evaluation, Ziegler stated that plaintiff's tolerances would make it difficult to tolerate a full workday. She recommended that plaintiff work on a part-time basis: four hours a day.

On November 12, 2002, after four therapy sessions, plaintiff's physical therapist, Susan Lofton, summarized the results for Dr. Sliwa, stating plaintiff continued to have pain and weakness in his cervical spine. Lofton also reported that DiPietro had "difficulty performing any prolonged activity requiring holding his head erect." She concluded that he would benefit from continued therapy sessions.

A few weeks earlier, on November 1, 2002, the Social Security Administration found plaintiff disabled as of March 6, 2002, and awarded him disability benefits as of September 2002. The same month, Thomas Grzesik, a rehabilitation consultant hired by plaintiff to assess his employability, released his report. After reviewing plaintiff's medical records and other documents, Grzesik concluded that plaintiff could not perform the duties of his job as a CAD operator. Grzesik explained that the duration of sitting, walking, standing, reaching and use of fingers required by plaintiff's job exceeded his capacity for these activities. Grzesik also stated that plaintiff's difficulty concentrating due to pain and fatigue impeded his ability to complete his work projects. Plaintiff's second appeal was denied on February 3, 2003, and thereafter he filed the present suit in federal court.

## DISCUSSION

The court's function in ruling on a motion for summary judgment is merely to determine if there is a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Only if the evidence on file shows that no such issue exists and that the moving party is entitled to judgment as a matter of law will the court grant the motion.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Bennett v. Roberts, 295 F.3d 687, 694 (7th Cir. 2002). Both plaintiff and defendant argue that they are entitled to summary judgment on plaintiff's claim for disability benefits.

Generally, a court reviews a plan administrator's denial of benefits *de novo,* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber v. Bruch, 489 U.S. 101, 115 (1989). If the plan confers discretionary authority to the administrator, then the court applies the arbitrary and capricious standard of review. Wilczynski v. Kemper Nat. Ins. Cos., 178 F.3d 933, 934 (7th Cir. 1999). In the court's Memorandum Opinion and Order dated September 16, 2003, the court held that plaintiff's insurance plan conferred discretionary authority to Prudential and, therefore, the arbitrary and capricious standard applies. In plaintiff's memorandum in support of summary judgment, he asks this court to reconsider its decision.

Plaintiff rehashes the arguments from his original motion on the issue. He maintains that the language reserving discretion does not apply to an initial determination of disability and that the language is ambiguous. As explained in the court's prior opinion, the language conferring discretionary authority to Prudential appears under the heading, "What Information Is Needed as Proof of Your Claim?" The placement of the language refutes plaintiff's contention that it does not apply to initial determinations. The language reads, "We may request that you send proof of continuing disability, satisfactory to Prudential, indicating that you are under the regular care of a doctor." This sentence suffers from no reasonable ambiguity. Plaintiff's attempt to compare this sentence, with its clear modifying phrase, "satisfactory to Prudential," to the language in Coles v. LaSalle Partners Inc. Disability Plan,

287 F. Supp.2d 896 (N.D. Ill. 2003), is misguided. The <u>Coles</u> insurance plan stated, "You must provide us, at your own expense, satisfactory proof of Disability before benefits will be paid." *Id.* at 900. Unlike in Prudential's plan, there is no indication in the <u>Coles</u> plan to whom the proof must be satisfactory. As previously decided, Prudential's denial of plaintiff's benefits claim will be reviewed, using an arbitrary and capricious standard.

Under the arbitrary and capricious standard, a plan administrator's decision should not be overturned unless it "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before [it] or is so implausible that it could not be ascribed to a difference in view . . . ." <u>Reilly v. Blue Cross and Blue Shield United of Wisconsin</u>, 846 F.2d 416, 420 (7th Cir. 1988) *cert. denied* 488 U.S. 856 (1988); *see* <u>Postma v. Paul Revere Life Insurance Company</u>, 1998 WL 641335 (N.D.Ill. 1998). Despite the deference accorded under this standard, the administrator's discretion is not unlimited – the decision will be overturned if it is unreasonable or if the administrator fails to afford the claimant a full and fair review. *See* <u>Hawkins v. First Union Corporation Long-Term Disability Plan</u>, 326 F.3d 914 (7th Cir. 2003); <u>Crespo v. Unum Life Insurance Company of America</u>, 294 F. Supp.2d 980, 994 (N.D. Ill. 2003). Given the evidence in the administrative record, the plan administrator's decision to deny plaintiff disability benefits was arbitrary and capricious.

Prudential provides three reasons for the denial of plaintiff's claim: lack of medical evidence to support a finding of disability, his failure to work to the greatest extent possible, and his failure to follow treatment recommendations. Prudential first denied plaintiff's benefits on April 4, 2002. In its letter explaining the decision, the company recognized plaintiff suffered from a condition requiring medical treatment, but found that the medical

information did not demonstrate an inability to perform his job. Prudential's decision on plaintiff's first appeal summarized medical evidence not discussed in its prior decision, but it ultimately reached the same conclusion: "Although Mr. Dipietro is experiencing symptoms which require medical treatment, based on the available medical information, there has been no change with his condition . . . ." In response to plaintiff's second appeal, Prudential stated that it received new submissions from Dr. Sliwa, vocational counselor Thomas Grzesik, the Social Security Administration, and plaintiff's physical therapists, and that it had reviewed all the evidence. Prudential noted plaintiff's impairment in his left leg and right arm, but found no evidence of a change in his condition. Prudential then discussed Dr. Sliwa's findings that plaintiff may be suffering from depression and his recommendation that plaintiff meet with a psychiatrist. Prudential also highlighted plaintiff's delay in attending physical therapy. In summary, Prudential reaffirmed its prior conclusions that the medical evidence did not support a finding of a significant change, which prevented plaintiff from working. For the first time, the company also determined that plaintiff had not followed the treatment recommendation of his physician and had not worked to the greatest extent possible, as required by the insurance plan.

Prudential concluded that the medical evidence did not support a finding of disability by relying on an improper assumption,  discrediting evidence with no justification, and conducting a selective review of the evidence. In its decision on plaintiff's second appeal, Prudential explained each of its rulings. All three of its decisions relied on a determination that the medical information "did not document a change in [DiPietro's] condition." As the denial of the second appeal states, "We have determined there are no objective findings to indicate the impairment was increasing." Even if true, this fails to justify a finding that

plaintiff is not disabled. In <u>Hawkins v. First Union Corporation Long-Term Disability Plan</u>, 326 F.3d 914 (7th Cir. 2003), the plan administrator argued that the claimant was not disabled because he worked from 1993 to 2000 with his condition and there was no indication that it had worsened since then. The Seventh Circuit dismissed this as bad argument because there was no "logical incompatibility between working full time and being disabled from working full time . . . ." <u>Id.</u> at 918. Despite this finding, Prudential argues that the "best evidence" that plaintiff was not disabled and could perform his duties as a CAD operator is the fact that he had been performing those same duties for the previous thirty years. Reliance on plaintiff's thirty years of employment, makes little sense given that post-polio syndrome is a condition that can affect polio survivors anywhere from ten to forty years after recovery from an initial attack of polio, and the record nowhere indicates that plaintiff suffered from post-polio syndrome before 1997. The earliest evidence that plaintiff was experiencing worsening symptoms of the syndrome appears on his survey for the post-polio syndrome clinic database in 2000. Just as Hawkins may have continued to work for seven years despite his pain and fatigue, so too may have plaintiff worked for two years.

Prudential provides no support for its assertions that plaintiff's case does not involve "heroic efforts" of enduring pain. On the other hand, letters from plaintiff's family, friends and co-workers do support plaintiff's contention that post-polio syndrome made his work increasingly difficult and rendered him disabled. While there are certainly grounds for skepticism when reviewing testimonials from acquaintances of the claimant, Prudential ignores these letters altogether. This evidence was comprised of statements from seven individuals who observed plaintiff's increasing fatigue, and included statements from his Washington co-workers that his difficulty concentrating began to affect his work and at times his pain forced

him to leave work early.

Prudential also discredits medical evidence without justification. Under ERISA, there is no "treating physician rule" that requires plan administrators to grant deference to the opinions of a claimant's physician. Black & Decker Disability Plan v. Nord, 123 S.Ct. 1965 (2003). Nonetheless, plan administrators "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Id.* at 1972. In Nord, a physician hired by the plan administrator examined an individual claiming disability. Contrary to the findings of the claimant's treating physician, the plan administrator's doctor concluded that the claimant could perform sedentary work with the aid of pain medication. *Id.* at 1968. The Supreme Court ruled that the plan administrator need not give more weight to the determination of the claimant's physician. Prudential's failing is not in refusing to defer to the findings of Dr. Sliwa, but rather in refusing to credit them when there are no medical findings to the contrary. Unlike in Nord, Prudential has not had plaintiff examined by its own physician. Insurance providers are not required to seek independent medical evaluations, but an evaluation by the insurer is evidence of a thorough investigation into the claim. Crespo v. Unum Life Insurance Company of America, 294 F.Supp.2d 980, 995 (N.D.Ill. 2003).

In Hawkins v. First Union Corporation Long-Term Disability Plan, 326 F.3d 914, 917 (7th Cir. 2003), the Seventh Circuit stated that a treating physician's information would likely be superior to the information of a plan's medical consultant, if the consultant had not examined the claimant but had only spoken to the treating physician on the telephone. There is no evidence that a consultant for Prudential even spoke with plaintiff's doctors. Yet, Prudential seemingly ignores Dr. Sliwa's assessment that plaintiff is not capable of full-time employment due to worsening symptoms of post-polio syndrome.

Prudential's argument in support of its decision reveals a selective review of the evidence. Defendant suggests that plaintiff's impending layoff motivated his claim. As proof, it highlights a report in which Dr. Sliwa mentions both plaintiff's pending layoff and his complaints of symptoms consistent with post-polio syndrome. This argument appears to ignore evidence of plaintiff's ongoing complaints since 2000 of progressive fatigue, neck pains and headaches. These complaints pre-date news of plaintiff's layoff.

Prudential also argues that plaintiff's statements regarding his physical therapy and his job responsibilities are inconsistent, thus calling into question his credibility. Dr. Sliwa's discovery that plaintiff's strength was slightly better in certain areas after therapy does not evidence plaintiff's untruthfulness when he said he did not believe therapy was helping. An individual's perceptions often fail to reflect reality, especially where the discrepancies are subtle. Nor are there obvious inconsistencies between plaintiff's SSA disability claim form, which stated that his job involved lifting ten-pound objects, walking up to two hours, and standing for one hour, and the list of work requirements that he wrote during the consideration of his claim, stating that his job required carrying "heavy and cumbersome" stick sets, "a lot of walking," climbing stairs and walking on uneven ground. Perhaps ten pounds is unusually heavy for a stick set and certainly two hours of walking a day could be characterized as "a lot." Furthermore, Prudential provides no evidence that plaintiff's work did not entail these activities. It also fails to show that plaintiff's alleged inconsistencies in his job description are not a reflection of changes in his actual responsibilities.

Prudential selectively reviewed the attending physician's statement for plaintiff's disability claim application by highlighting one of Dr. Sliwa's answers. In response to the question, "What Job Category best describes the claimant's functional abilities," Dr. Sliwa

selected "Sedentary" – the least demanding of the defined categories offered, which included "Light," "Medium," "Heavy" and "Very Heavy." "Other" was the final possibility. Dr. Sliwa qualified his selection by writing in the margin, "Still a fatigue problem." Prudential's decision denying benefits focused on plaintiff's deficiencies in his leg and arm, but it failed to discuss Dr. Sliwa's assessment that plaintiff's "[f]atigue interferes with all activity that requires concentration." This observation, along with Dr. Sliwa's March 8, 2002 letter concluding that plaintiff was not capable of full-time employment, reveals that Prudential's reliance on the attending physician's statement to justify its denial of benefits is misguided.

Another example of Prudential's selective review of the evidence involves plaintiff's functional capacity evaluation. Prudential argues that the original report prepared by Maureen Ziegler on October 23, 2002, affirms that plaintiff was able to perform his sedentary job. In fact, the report states, "Mr. Dipietro can return to work at the sedentary level respectful of the tolerances outlined in this report." The third page of that same report states the duration/capacity for several activities involved in sedentary work. Plaintiff's duration/capacity for sitting is two hours and his tolerance for it is "Occasional." His duration/capacity for walking and standing are 15 minutes and 30 minutes, respectively. Prudential appears to ignore these limitations, which are plainly referenced under the report's final recommendation. Defendant then casts aspersions on the addendum that Ziegler wrote, explaining the findings from the first report that Prudential disregarded. The record reflects that the undated addendum is not an alteration of the original report, but rather a restatement of it. Ziegler specifies the result of taking into account plaintiff's tolerances as outlined in the report – a finding that plaintiff is only capable of part-time work.

In its response, Prudential acknowledges that even though the Social Security

Administration's ruling on plaintiff's eligibility for benefits is not dispositive on this claim, it is entitled to some weight. *See* Ladd v. ITT Corp., 148 F.3d 753, 755-56 (7th Cir. 1998). Prudential mentions that it received the SSA's records in its decision denying plaintiff's second appeal, yet the decision does not discuss them. As with plaintiff's medical evidence, Prudential dismisses the SSA ruling without providing any justification for doing so. Prudential likewise ignored Grzesik's vocational evaluation. As explained above, contrary to Prudential's assertion, Grzesik's conclusion that plaintiff could not perform his job responsibilities supported Dr. Sliwa's assessment and Ziegler's findings, as well as the SSA's ruling. Despite this, it was dismissed without discussion.

In its denial of plaintiff's second appeal, Prudential provided two other justifications for its decision. The first was that plaintiff was not working to his full capacity, as required by the plan. Prudential relies on a provision in the plan that states, "We will stop sending you payments and your claim will end on the earliest of the following: 1. During the first 12 months of payments, when you are able to work in your regular occupation on a part-time basis but you choose not to; after 12 months of payments, when you are able to work in any gainful occupation on a part-time basis but you choose not to." The policy defines part-time basis as "the ability to work and earn 20% or more of your indexed monthly earnings." The courts interpret the language of these policies as it does any contract, employing the ordinary meanings of words. *See* Swaback v. American Information Technologies Corp., 103 F.3d 535, 540-41 (7th Cir. 1996). Given the plain meaning of this provision, it does not apply to plaintiff. The provision discusses two situations in which payments will be stopped. One is during the first twelve months of payment and the other is after twelve months of payment. Plaintiff has never been approved for payments. Thus, by its own terms, this provision does not apply to

plaintiff's situation.

The language regarding payments is not the only evidence that Prudential improperly relied on this provision to deny plaintiff's disability benefits. The provision imposes an obligation on a disabled policyholder to work part-time, if able, in his regular occupation during his first year of disability, and in any occupation after one year. Therefore, after finding a claimant disabled, Prudential may employ this provision to stop payments if the disabled policyholder is presented with part-time work in his regular occupation that he is capable of performing but refuses to accept. In plaintiff's case, Prudential considered this obligation to accept part-time work an element of his initial claim for disability. Prudential argues in its memorandum that it reasonably denied plaintiff's claim because his functional capacity evaluation showed he could work a four-hour day, but "he has not engaged in any gainful employment (part-time or otherwise) since March 5, 2002." However, under the terms of the plan plaintiff has no obligation to prove that he engaged in part-time work in order to succeed on his disability benefits claim. The onus for showing that a disabled policyholder refused to accept part-time work that he was capable of performing falls on Prudential after the claimant has made a showing of disability. Prudential has provided no evidence that plaintiff refused to accept an offer of part-time work in his regular occupation.[1] Thus, even if this provision did apply to plaintiff at this stage, it would not justify Prudential's denial of plaintiff's benefits.

Prudential's third and final reason for denying plaintiff's claim is his failure to

---

[1] Despite Prudential's argument, a showing that plaintiff was offered "any gainful employment" on a part-time basis would not satisfy its burden when employing this provision. The language of the provision requires Prudential to show that during plaintiff's first year of disability he was offered part-time work in his *regular occupation* that he was capable of performing, but refused to accept.

continue physical therapy and to consult with a psychiatrist. To make a claim for disability benefits under the Prudential plan, the claimant must submit proof that he is under the regular care of a doctor. The plan defines regular care as:

> You personally visit a doctor as frequently as is medically required, according to generally accepted medical standards, to effectively manage and treat your disabling condition(s); and

> You are receiving the most appropriate treatment and care, which conforms with generally accepted medical standards, for your disabling condition(s) by a doctor whose specialty or experience is the most appropriate for your disabling condition(s), according to generally accepted medical standards.

Prudential argues that plaintiff failed to receive the most appropriate treatment because Dr. Sliwa's recommendation to see a psychiatrist and participate in physical therapy went unheeded. In his notes from May 2, 2002, Dr. Sliwa suggested that plaintiff may suffer from depression and that he should "see a psychiatrist or possibly some form of treatment for his depression." The next day he wrote a letter to plaintiff's primary care physician, Dr. Prete, initiating a discussion regarding plaintiff's depression and a possible referral to a psychiatrist. In his assessment from September 25, 2002, Dr. Sliwa repeated his suggestion "that it would be wise for [DiPietro] . . . to see a psychiatrist."

The plan language cited by Prudential requires that plaintiff receive appropriate treatment and care for his "disabling condition(s)." Plaintiff claims that he is disabled from post-polio syndrome. While he may also suffer from depression, that is not the disabling condition for which he is seeking benefits. Though Dr. Sliwa stated that depression may be contributing to plaintiff's "pain, poor sleep, and overall fatigue," he does not indicate that depression, not post-polio syndrome, is the cause of these symptoms. In fact, as explained above, the doctor repeatedly states that plaintiff suffers from significant fatigue as a result of

post-polio syndrome.

Even if plaintiff is required to receive appropriate care for depression, Prudential could not reasonably deny benefits on this basis, given this record. Dr. Sliwa's notes indicate that seeing a psychiatrist was a possible treatment. The doctor allowed for other forms of treatment, and at plaintiff's suggestion agreed to discuss the issue with Dr. Prete. Prudential does not indicate what Dr. Prete's recommendations to plaintiff were following Dr. Sliwa's letter, nor that plaintiff did not pursue some other form of treatment.

Dr. Sliwa also recommended that plaintiff participate in physical therapy to treat the effects of post-polio syndrome. Prudential contends that plaintiff delayed starting therapy and stopped a month early. Therefore, defendant argues, plaintiff failed to obtain the most appropriate care and its denial of benefits is justified. However, the record does not support this conclusion. Dr. Sliwa's appointment notes from January 24, 2002, recommend that plaintiff undergo a sleep study and then, after the study, physical therapy. Plaintiff returned to see Dr. Sliwa on February 7, 2002, after completing his sleep study. At this appointment Dr. Sliwa recommended a continuous positive airway pressure (CPAP) titration study as well as physical therapy. He stated that plaintiff is "aware of our recommendations in the future" and "will pursue these and will contact us when indeed he's ready for the titration study and the therapy." This language clearly does not mandate immediate treatment. Plaintiff did undergo the titration study and returned to Dr. Sliwa on March 7, 2002. The doctor again mentioned the "possibility of therapy in the future . . . ." About one month later, plaintiff began physical therapy at the Rehabilitation Institute of Chicago. These records do not support a reasonable finding that plaintiff violated the regular care provision of the plan. Between January 24 and

March 7 he met with Dr. Sliwa three times and underwent two different sleep-related studies. Dr. Sliwa's treatment recommendations consistently allowed for plaintiff to begin therapy in the future. It is unreasonable for Prudential to find that appropriate treatment required plaintiff to begin therapy immediately, when Dr. Sliwa's recommendations indicated no such requirement.

Plaintiff participated in physical therapy from April 8, 2002, through May 1, 2002. On May 2, 2002, he returned to Dr. Sliwa. Plaintiff reported that he thought walking was more difficult as a result of his therapy. In his notes, Dr. Sliwa wrote that plaintiff's therapist suggested that he continue physical therapy for one more month. Dr. Sliwa's plan contained a recommendation to plaintiff's primary care physician that plaintiff continue in physical therapy. The record is silent on Dr. Prete's response to these suggestions from Dr. Sliwa. In its denial of plaintiff's second appeal, Prudential states that it was "unclear if Mr. DiPietro continued PT in May 2002 . . . ." Had Prudential contacted Dr. Prete, it could have clarified plaintiff's treatment following Dr. Sliwa's suggestions. Prudential's reliance on this argument, despite its uncertainty regarding Dr. Prete's and DiPietro's response to Dr. Sliwa's recommendations, once again reveals its failure to make a full and fair assessment of plaintiff's claim.

Prudential's denial of plaintiff's disability claim was arbitrary and capricious. Accordingly, we reverse its decision and deny defendant's cross-motion for summary judgment. The Seventh Circuit has recognized that an award of retroactive benefits is not always the proper remedy for a plan administrator's arbitrary and capricious decision. However, "where there is no evidence in the record to support a termination or denial of

benefits," it is the proper remedy. Quinn v. Blue Cross and Blue Shield Association, 161 F.3d

472, 477 (7th Cir. 1998)(citations omitted). In support of its finding, the Seventh Circuit cited

Grossmuller v. International Union, United Auto., Aerospace & Agricultural Implement

Workers of America, UAW, 715 F.2d 853, 858-59 (3d Cir. 1983), where the plan

administrator's claims procedure did not provide the claimant with a full and fair review, and

Govindarajan v. FMC Corp., 932 F.2d 634, 637 (7th Cir. 1991), where the plan administrator

conducted a selective review of medical evidence and reached a conclusion that was

unreasonable. Like the decision in Grossmuller, Prudential's decision did not provide plaintiff

with a full and fair review, and like the decision in Govindarajan, Prudential's decision was

based on a selective review of the evidence resulting in an unreasonable conclusion. The

record is clear that plaintiff is entitled to disability benefits. The court, therefore, grants

plaintiff's summary judgment motion and awards benefits retroactive to March 6, 2002.

    In addition, plaintiff is entitled to prejudgment interest and attorney's fees. There is

a presumption in favor of awarding prejudgment interest to successful plaintiffs in ERISA

cases to fully compensate the plaintiff and eliminate any incentive for the defendant to delay

payment. Fritcher v. Health Care Service Corp., 301 F.3d 811, 820 (7th Cir. 2002); see

Gorenstein Enters., Inc. v. Quality Care-USA, Inc., 874 F.2d 431, 436 (7th Cir. 1989); see also

Rivera v. Benefit Trust Life Ins. Co., 921 F.2d 692, 696 (7th Cir. 1991). Plaintiff urges the court

to set the prejudgment interest rate at 9%, the rate applied to overdue insurance payments

under the Illinois Insurance Code, 215 ILCS 5/357.9. While recognizing that the interest rate

is left to the discretion of the district court, the Seventh Circuit has suggested that district

judges use the prime rate for fixing prejudgment interest. Fritcher, 301 F.3d at 820 (citing

Gorenstein, 874 F.2d at 436). Given the absence of any reason to disregard this suggestion, the court sets the prejudgment interest rate at the current prime rate, 4%.

Under 29 U.S.C. § 1132(g)(1), the court may in its discretion award reasonable attorney's fees and costs to a party in an ERISA action. In the Seventh Circuit, two tests have evolved for determining whether a prevailing party in an ERISA case is entitled to attorney's fees. One requires the application of five factors: "1) the degree of the offending parties' culpability or bad faith; 2) the degree of the ability of the offending parties to satisfy personally an award of attorney's fees; 3) whether or not an award of attorney's fees against the offending parties would deter other persons acting under similar circumstances; 4) the amount of benefit conferred on members of the pension plan as a whole; and 5) the relative merits of the parties' positions." Quinn, 161 F.3d at 478. The second test asks whether the losing party's position was "substantially justified." As the defendant points out, the courts have found that both tests essentially pose the question: "Was the losing party's position taken in good faith or was it an effort to harass the opposing side?" An application of the five factors shows that Prudential's denial of plaintiff's claim was not substantially justified. For the first and fifth factors, the court looks to Prudential's failure to provide plaintiff a fair and full hearing by relying on faulty inferences, discrediting evidence without justification, and conducting a selective review of the evidence plaintiff provided. Prudential did not conduct its own medical examination, consult with plaintiff's doctors, or provide other medical evidence to support its decision. These actions evidence a degree of bad faith and a lack of merit in Prudential's position. The remaining factors are also satisfied as there is no evidence that Prudential would be unable to pay the attorney's fees, and the award would encourage

Prudential and other plan administrators to perform a full and fair review of its policyholders' disability claims.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is granted and defendant's cross-motion for summary judgment is denied.

_James B. Moran_
JAMES B. MORAN
Senior Judge, U. S. District Court

____March 25__, 2004.

# United States District Court
## Northern District of Illinois
### Eastern Division

FRANK DI PIETRO

v.

PRUDENTIAL INSURANCE CO OF
AMERICA

**JUDGMENT IN A CIVIL CASE**

Case Number: 03 C 1018

☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■ Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that plaintiff's motion for summary judgment is granted and defendant's cross-motion for summary judgment is denied.

Michael W. Dobbins, Clerk of Court

Date: 3/25/2004

Linda Garth, Deputy Clerk